# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

LISA LEE,                                    )
                                             )
     *Plaintiff*,                              )
                                             )    Case No. 6:21-cv-00016-RSB-CLR
v.                                           )
                                             )
MEDICREDIT, INC.,                            )
                                             )
     *Defendant*.                             )
                                             )

## DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AND MEMORANDUM IN SUPPORT THEREOF

Defendant Medicredit, Inc. ("Medicredit") respectfully moves to dismiss Plaintiff Lisa Lee's ("Plaintiff's" or "Lee's") First Amended Complaint (the "Complaint") for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) or, alternatively, for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). In support thereof, Medicredit states as follows.

## PRELIMINARY STATEMENT

Medicredit moved to dismiss Plaintiff's original complaint on similar grounds to those advanced here. Before that motion could be resolved, the Plaintiff filed her operative Complaint as of right under Fed. R. Civ. P. 15(a)(1)(B). Her filing of the operative Complaint rendered Medicredit's initial motion to dismiss moot. *See, e.g.*, *Saint v. Perimeter Mortg. Funding Corp.*, 2014 WL 12465413 *1 (N.D. Ga. July 29, 2014). To avoid any confusion, Medicredit consents to the denial of its initial motion to dismiss, without prejudice, on the basis that it is moot.

1

## MOTION TO DISMISS

1.      Plaintiff sues Medicredit for alleged violation of the Fair Debt Collection Practices Act (the "FDCPA," 15 U.S.C. § 1692, *et seq.*). She also seeks relief under the Georgia Fair Business Practices Act (the "FBPA," O.C.G.A. § 10-1-390, *et seq.*) and the Unfair and Deceptive Trade Practices Toward the Elderly Act (the "UDPTEA," O.C.G.A. § 10-1-850, *et seq.*). Finally, she asserts a "common law tort claim" asserting a "common law right to be free from 'unreasonable bill-collection procedures, e.g., making false statements, threats, and harassing telephone calls.'"

2.      The factual basis for each of Plaintiff's claims are:[1] (a) Medicredit sought to collect from the Plaintiff a medical debt she did not owe; (b) Medicredit communicated with her at a time and place inconvenient when it wrote a letter to her lawyer; and (c) Medicredit communicated with her directly after learning she was represented by counsel.

3.      The foregoing allegations, coupled with additional documentation necessarily embraced by the Complaint that the Court may properly consider without converting this Motion to one for summary judgment, fail to state a claim under the FDCPA upon which relief can be granted.

      a.  While Plaintiff offers a legal conclusion she was not obligated to pay the debt, she offers no facts to support that conclusion. What is more, she agreed in writing to pay the debt.

      b.  While Plaintiff alleges Medicredit communicated with her at an inconvenient time and place by writing to her lawyer, she ignores that the lawyer instructed Medicredit that all correspondence should be directed to him. Further, the

---

[1] Medicredit here summarizes the allegations of the Complaint. It neither admits nor denies the allegations at this time.

FDCPA permits a debt collector to communicate freely with a consumer's counsel.

c. While Plaintiff alleges Medicredit communicated with her directly after learning she was represented by counsel, she ignores that the FDCPA permits a debt collector to do so when a consumer's lawyer fails to respond to communications from the debt collector within a reasonable period of time. Here, approximately seven months elapsed between Medicredit's solicitation of information from Plaintiff's lawyer and the date on which it wrote to Plaintiff. Medicredit submits that such a lengthy delay is unreasonable as a matter of law.

4.       Plaintiff's claims under the FBPA and UDPTEA are expressly alleged to be linked to her claims under the FDCPA—that is, if her FDCPA claims fail, so do her FBPA and UDPTEA claims. As explained above, her FDCPA claims fail. Therefore, her claims under the FBPA and UDPTEA fail too and are due to be dismissed.

5.       Plaintiff's common law claim fails because Plaintiff does not allege the type of extraordinarily invasive debt collection practices necessary to support such a claim. It therefore is due to be dismissed.

6.       In the alternative, should the Court agree that Plaintiff's FDCPA claims fail, the Court may dismiss Plaintiff's remaining claims for lack of subject matter jurisdiction. The sole basis alleged for subject matter jurisdiction is federal-question jurisdiction for Plaintiff's FDCPA claim and supplemental jurisdiction for the state law claims. Absent a viable federal cause of action, the Court no longer will have federal-question jurisdiction and may properly decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.

7.      The bases for the relief requested are set forth more fully in the Supporting Memorandum immediately following this Motion.

WHEREFORE, Medicredit, Inc. respectfully requests that the Court dismiss the Complaint, that Plaintiff Lisa Lee take nothing by way of same, and that the Court enter such other or additional relief as it deems just and appropriate in the circumstances.

## SUPPORTING MEMORANDUM

### INTRODUCTION

Plaintiff sues Medicredit for alleged violation of the Fair Debt Collection Practices Act (the "FDCPA," 15 U.S.C. § 1692, *et seq.*). She also seeks relief under the Georgia Fair Business Practices Act (the "FBPA," O.C.G.A. § 10-1-390, *et seq.*) and the Unfair and Deceptive Trade Practices Toward the Elderly Act (the "UDPTEA," O.C.G.A. § 10-1-850, *et seq.*). Her claims under the FBPA and UDPTEA expressly are derivative of her FDCPA claim: that is, if the FDCPA claim fails so do her claims under the FBPA and UDPTEA. (Complaint, ¶¶ 19 ["UDPTEA is not a claim in its own right, but, rather, enhances damages when a violation of the FBPA occurs"] and 83 ["Defendant violated the FBPA by violating the FDCPA"]). She also asserts a free-standing "common law tort claim" asserting a "common law right to be free from 'unreasonable bill-collection procedures, e.g., making false statements, threats, and harassing telephone calls.'" (Complaint, ¶ 101).

The factual allegations underpinning the Plaintiff's claims are fairly simple. The Plaintiff alleges that Medicredit sought to collect a medical debt from the Plaintiff that the Plaintiff did not owe. The Plaintiff also alleges that Medicredit communicated with her at an inconvenient time and place when it sent a letter to her lawyer who had instructed Medicredit in writing that "[i]f you have any further communications, please direct them through this office, as I represent her."

Finally, the Plaintiff alleges Medicredit sent a letter directly to her after receiving notification that she was represented by counsel.

The Complaint fails to state a claim upon which relief can be granted. As to the FDCPA claim, the Plaintiff alleges no facts showing that she was not liable to pay the debt. She also fails to allege facts that Medicredit communicated with her at an inconvenient time and place when Medicredit followed her lawyer's express instructions to communicate exclusively with the lawyer. And, because the FDCPA claims fail, so do her claims under the FBPA and UDPTEA. Finally, while the FDCPA generally prohibits a debt collector from communicating with a consumer the debt collector knows to be represented by counsel, there is an exception: when counsel "fails to respond within a reasonable period of time to a communication from the debt collector." 15 U.S.C. § 1692c(a)(2). The Plaintiff fails to allege her attorney responded to Medicredit's inquiries and, in fact, he did not.

The Complaint also fails to state a claim based on Plaintiff's alleged right to be free from unreasonable bill-collection procedures. As noted, Plaintiff owed the debt and communicated with her attorney as instructed.

**LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Fed. R. Civ. P. 12(b)(6) permits a party to move to dismiss all or part of a pleading for failure to state a claim upon which relief can be granted. To survive such a motion, "a complaint must include enough facts to state a claim to relief that is plausible on its face." *Hunt v. Aimco Props., LP*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quotation omitted). The

allegations of a complaint "must amount to more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation omitted).

While a court typically is constrained to consider only the allegations included in the Complaint on a motion under Rule 12(b)(6), the court "may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of America Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

Here, Medicredit attaches a contract form executed by the Plaintiff in which she agreed to pay the charges associated with the medical services she received. Same may be considered without converting this Motion to one for summary judgment because it is a "relationship-forming contract" that is "central to" the Plaintiff's claim and the authenticity of which cannot reasonably be disputed. *See, e.g.*, *SFM*, 600 F.3d at 1337); *see also*, *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (a "document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

### ARGUMENT

The Complaint fails to state a claim upon which relief can be granted.

### I.     The Complaint Fails to State a Claim Under the FDCPA.

The Complaint fails to state a claim under the FDCPA because it does not allege facts showing that the Plaintiff did not owe the Debt and, moreover, the Plaintiff expressly agreed to pay the charges. Further, the Complaint fails to state a claim under the FDCPA because Medicredit did not communicate with the Plaintiff at a time or place known to be inconvenient when it complied with her lawyer's instruction to communicate only with the lawyer.

### A.  Plaintiff Owed the Debt.

The Plaintiff does not allege she never received the medical treatment creating the debt. Nor does she allege the facility is not entitled to payment for that medical treatment. Instead, she offers only the conclusion that "the Social Security Administration was responsible for paying" the debt because she "was a disabled person with a pending Social Security Disability Claim." (Complaint, ¶¶ 28, 61).

The Plaintiff advances no authority for the proposition that the Social Security Administration is solely liable for paying the medical expenses for a "disabled person with a pending Social Security Disability Claim," and Medicredit's research reveals none. Moreover, even if that was the general rule—and again, Medicredit's research does not reveal that it is—the Plaintiff ignores that she promised to pay for the services she received. In particular, she signed a document entitled "Conditions of Admission and Consent for Outpatient Care" (the "Consent Form") pursuant to which she agreed to "pay the Patient's account at the rates stated in the hospital's price list (known as the 'Charge Master') effective on the date the charge is processed for the services provided, which rates are hereby expressly incorporated by reference as the price term of this agreement to pay the Patient's Account." A true and correct copy of the Consent Form is attached as <u>Exhibit A</u> and may be considered in resolving this Motion because it is central to the Plaintiff's claim and its authenticity cannot reasonably be disputed.

Instead of advancing any authority that the Social Security Administration was solely liable to pay for her medical services, Plaintiff attaches to her Complaint an "Appointment Reminder" from Disability Adjudication Services ("DAS"). (Doc. 6-1, p. 6). There, DAS wrote that it "recently sent you a letter on behalf of the Social Security Administration, scheduling a medical appointment, at no cost to you, pertaining to your disability claim or the review being conducted

on your disability status." (*Id.*). It then proceeded to supply information regarding an appointment with "Georgia Internal Medicine Partners LLC." (*Id.*).

The Plaintiff characterizes this letter—which was sent to the Plaintiff—as stating that Plaintiff "would not be held responsible for any billing." (Complaint, ¶ 30). The Plaintiff further alleges that NPAS recognized as much, because it identified Disability Adjudication Services as the Plaintiff's "primary" insurance. (*Id.* at ¶ 31 and doc. 6-1, pp. 7-8).

What the Plaintiff ignores is that she agreed in the Consent Form to pay for the services rendered. (Ex. A, p. 2, ¶ 5). She further ignores that she agreed in the Consent Form that, regardless of her insurance coverage or lack thereof, "the financial responsibility for the services rendered belongs to me, the Patient or Guarantor." (*Id.* at p. 3, ¶ 5). Finally, as noted, she does not explain why a third-party's promise to pay relieves her of any payment liability whatsoever, even when the third-party fails to honor that promise. Frankly, to the extent the Plaintiff has a basis to be aggrieved, it appears her ire should be directed not toward Medicredit but rather to the Disability Adjudication Services or the Social Security Administration.

Because the Plaintiff agreed to pay for the services received and because it appears there is no authority holding that the Social Security Administration is solely liable for paying medical expenses for a "disabled person with a pending Social Security Disability Claim," Plaintiff's claims are due to be dismissed to the extent they are predicated on her theory she was not liable to pay the debt.

### B.  Medicredit Was Permitted to Communicate with Plaintiff's Lawyer.

Section 1692c(a)(1) of the FDCPA prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "at any unusual time or place or at a time or place known or which should be known to be inconvenient to the consumer."

As alleged, a lawyer for the Plaintiff ("Mr. Goodman") wrote to Medicredit on September 10, 2019. (Complaint ¶ 32 and Exhibit A thereto). There, Mr. Goodman advised: "If you have any further communications, please direct them through this office, as I represent her." Thus, Mr. Goodman expressly advised that all communications should go through his office.

Nonetheless, Plaintiff alleges Medicredit violated section 1692c(a)(1) by directing a later letter to Mr. Goodman. Plaintiff reasons that Medicredit knew or should have known this was inconvenient to her because another lawyer sent a letter on her behalf. (Complaint ¶ 76 and Exhibit F thereto). In that letter, the new lawyer ("Mr. Daniels") made a pre-suit demand on Medicredit. At no point, however, did the new lawyer state that further communications—other than those related to the pre-suit demand—should be directed only to him, rather than to Mr. Goodman.

The problem with Plaintiff's claim is that Mr. Daniels never advised that further communications should be directed only to him, rather than to Mr. Goodman as instructed in Mr. Goodman's letter. Thus, Plaintiff fails to allege facts making it plausible that Medicredit knew or should have known that writing to Mr. Goodman was inconvenient to the Plaintiff. Nor, for that matter, has Plaintiff alleged facts making it plausible that Medicredit's submission of a letter to Mr. Goodman was inconvenient *for the Plaintiff* as opposed, perhaps, to Mr. Daniels.

Moreover, "§ 1692c as a whole permits debt collectors to communicate freely with consumers' lawyers" because in section 1692c, the term "consumer" does not include the consumer's attorney; holding otherwise would "make[] hash" of subsections (a) and (b) of section 1692c. *Tinsley v. Integrity Financial Partners, Inc.*, 634 F.3d 416, 418-19 (7th Cir. 2011). Thus, Medicredit *could not* have violated section 1692c by communicating with Plaintiff's attorney.

Mr. Goodman instructed that correspondence regarding the debt be directed to him. That instruction was not revoked and, in any event, a debt collector is permitted under section 1692c to

communicate with a consumer's lawyer. Thus, Plaintiff fails to state a claim for violation of section 1692c(a)(1).

### C. Plaintiff's Lawyer Failed to Respond to Medicredit's Inquiries Within a Reasonable Period of Time.

Subsequent to Mr. Goodman's September 10, 2019 letter, Medicredit sent letters to Mr. Goodman dated September 27 and October 1, 2019 expressing its need for additional information. (Complaint ¶¶ 39, 42 and Exhibits C and D thereto). Receiving no response, Medicredit sent a single letter to the Plaintiff dated May 8, 2020. (Complaint ¶ 51 and Exhibit E thereto). There, Medicredit advised that Medicredit still had not received payment despite the claim having been filed with the designated insurer, and requested that Plaintiff contact the insurer to cause payment to be made. Medicredit affirmed it was "committed to working with you to obtain payment from the insurance company" but that Plaintiff "may be responsible for the entire balance of the account if the insurance company fails to pay the claim."

Plaintiff alleges that Medicredit's May 8, 2020 letter violated section 1692c(a)(2) of the FDCPA, which prohibits a debt collector from communicating with a consumer in connection with the collection of any debt "if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, *unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector*[.]" (Emphasis added).

Plaintiff does not allege that Mr. Goodman responded to Medicredit's letters to him at all, much less "within a reasonable period of time." And, in fact, the seven months that elapsed between Medicredit's October 1, 2019 letter to Mr. Goodman and its May 8, 2020 letter to the Plaintiff was doubtless a "reasonable period of time" for an attorney to respond to an inquiry

regarding his client. But Mr. Goodman did not respond, and Plaintiff does not allege he responded. At most, Plaintiff alleges that Medicredit did not need additional information from Mr. Goodman.[2] Even accepting that allegation as true, however, Medicredit cannot locate any authority holding that a consumer's attorney is free to ignore communications from a debt collector without freeing the debt collector to contact the consumer directly for information as permitted by section 1692c(a)(2) of the FDCPA. Indeed, that provision of the FDCPA permits direct contact whenever counsel omits to respond to any "communication from the debt collector."

For these reasons, Plaintiff fails to allege a violation of section 1692c of the FDCPA.

**D.  Plaintiff Did Not Timely Dispute the Debt or Demand Verification.**

Plaintiff charges Medicredit with violating section 1692g by continuing to attempt to collect the debt after receiving Plaintiff's dispute of same, without first verifying the debt.

15 U.S.C. § 1692g(b) provides that if a consumer notifies a debt collector in writing of a dispute within thirty days of the debt collector's initial communication with the debt collector, the debt collector shall cease collection efforts until it has verified the debt and mailed such verification to the consumer. *See, e.g.*, *Abdullah v. Ocwen Loan Servicing, Inc.*, 2014 WL 4851760 *5 (M.D. Ga. Sep. 29, 2014) ("to sustain a claim pursuant to § 1692g(b), the consumer must dispute the debt or any portion thereof within 30 days of receipt of the initial communication from the debt collector").

---

[2] Plaintiff's allegation on this score appears to rest, at least in part, on Medicredit's September 10, 2019 assertion that it was "currently investigating the matter" and that "no additional information or action" was needed from Plaintiff's counsel. (Complaint ¶ 36 and Exhibit B thereto). Her characterization of that letter is misleading at best. In fact, it says there is "no additional information or action needed from you *at this time*" and that if "it is determined that additional information is needed, someone will contact you. (Complaint, Exhibit B) (emphasis added). Of course, Medicredit did later write to Plaintiff's counsel to advise it needed further information.

As alleged, Medicredit sent its initial communication on August 6, 2019.[3] (Complaint, ¶ 31). Her dispute letter was sent September 10, 2019. (*Id.* at ¶ 32). Even affording Plaintiff the benefit of the three-day "mailbox rule," *see, e.g.*, *Arrington v. Alabama State Univ.*, 2008 WL 5071735 *3 (M.D. Ala. Nov. 25, 2008), Plaintiff's dispute was mailed more than thirty days after Medicredit's initial communication and Plaintiff does not allege otherwise. Plaintiff thus fails to state a claim under section 1692g.

### E.  Medicredit Did Not Violate Section 1692f.

Plaintiff alleges Medicredit violated section 1692f by attempting to collect an amount she did not owe. As addressed above, Plaintiff has failed to allege facts showing she did not owe the debt.

Plaintiff also, more generally, alleges Medicredit violated section 1692f "by engaging in debt collection practices designed to treat Plaintiff in an unfair and unconscionable manner." (Complaint ¶ 77). She alleges no facts in support of this conclusion and therefore fails to state a claim. What is more, "a claim raised under § 1692f fails as a matter of law where the claim fails to identify any misconduct beyond that which Plaintiff asserts violates other provisions of the FDCPA." *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1342 (N.D. Ga. 2015). Here, Plaintiff does not identify any additional misconduct, besides that which she advances in support of her other FDCPA violations, that would violate section 1692f. She fails to state a claim upon which relief can be granted.

### II.     The Complaint Fails to State a Claim Under the FBPA and UDPTEA.

As noted, Plaintiff's claims under the FBPA and UDPTEA expressly are derivative of her FDCPA claim: that is, if the FDCPA claim fails so do her claims under the FBPA and UDPTEA.

---

[3] She does not allege when she received the initial communication. Nor does she allege that she sent her dispute within thirty days of same.

(Complaint, ¶¶ 19 ["UDPTEA is not a claim in its own right, but, rather, enhances damages when a violation of the FBPA occurs"] and 83 ["Defendant violated the FBPA by violating the FDCPA"]). As explained above, Medicredit did not violate the FDCPA. Thus, Plaintiff's claims under the FBPA and UDPTEA necessarily fail and are due to be dismissed.

Plaintiff does offer the additional conclusion that Medicredit violated the FBPA because its alleged conduct "treated Plaintiff in an unfair manner in connection with a consumer transaction." (Complaint ¶ 85). But, as explained, Medicredit's conduct was lawful and in no manner unfair: Plaintiff incurred the debt and agreed to pay the debt, and all Medicredit did was communicate with her attorneys and, in one instance, communicate with her to ask that she follow up with her insurer.

### III.   The Complaint Fails to State a Claim for Common Law Tort.

As noted, Plaintiff also asserts a free-standing "common law tort claim" asserting a "common law right to be free from 'unreasonable bill-collection procedures, e.g., making false statements, threats, and harassing telephone calls.'" (Complaint, ¶ 101). As explained, however, Plaintiff has not alleged Medicredit made any false statements because she has not sufficiently alleged facts showing that she did not owe the debt. Indeed, the case cited as support for Plaintiff's common law right to be free from unreasonable collection procedures makes clear that "reasonable and necessary actions by a creditor to collect a bill do not constitute an actionable wrong against the debtor." *Dolanson Co. v. Citizens & Southern Nat. Bank*, 242 Ga. 681, 684 (1978).[4] Moreover,

---

[4] The case cited in *Dolanson* for the proposition that unreasonable collection practices are actionable at common law is nowhere near this case. *Blazer Fin. Servs., Inc. of Ga. v. Stewart*, 141 Ga. App. 156 (Ga. App. 2d Div., 1977). There, the creditor "told [the plaintiff] that if she could not get her payment up and talk money to him that night he would have a truck backed up in her yard and empty her house out" and "made repeated harassing calls to her." *Id.* at 157. Medicredit is not alleged to have done anything of the sort here, and it did not.

her Complaint omits any allegation that Medicredit ever made threats or harassing telephone calls to her.

### ALTERNATIVE REQUEST FOR RELIEF

The sole bases asserted in the Complaint for this Court's subject matter jurisdiction are federal-question jurisdiction for the FDCPA claim and supplemental jurisdiction for Plaintiff's state law claims. As explained, Plaintiff fails to state a viable claim under the FDCPA. That failure does not require a dismissal of the remaining claims without prejudice for lack of subject matter jurisdiction, but it does permit the Court to decline to exercise its supplemental jurisdiction. 28 U.S.C. § 1367(c)(3) ("district courts "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction"); *Palmer v. Hospital Authority of Randolph County*, 22 F.3d 1559, 1570 (11th Cir. 1994) (recognizing district court may properly exercise supplemental jurisdiction even after dismissing claim over which it has original jurisdiction). Should the Court (i) agree that the FDCPA claim fails as a matter of law and (ii) conclude that it should not exercise its supplemental jurisdiction, Medicredit requests that the Court dismiss Plaintiff's state law claims without prejudice for lack of subject matter jurisdiction.

### CONCLUSION

The acts Plaintiff attributes to Medicredit are not actionable. Plaintiff alleges she was not liable to pay for her medical treatment because she had a pending disability claim, but (a) Medicredit cannot locate authority holding that she is not liable for payment in such a situation and (b) in any event, Plaintiff promised to pay for the treatment she received. Plaintiff alleges Medicredit communicated with her attorney about her debt, but that was perfectly appropriate because the attorney instructed Medicredit to do so. Finally, Plaintiff complains that Medicredit

contacted her directly when it knew she was represented by counsel, but she does not allege her counsel timely responded to Medicredit's inquiries and, in fact, he did not do so.

For the foregoing reasons, the Complaint fails to state a claim upon which relief can be granted and is due to be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

/s/ *Joshua B. Zugish*
Joshua B. Zugish
GA Bar No. 238831
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
420 20th Street North, Suite 1900
Birmingham, AL 35203
Telephone: 205-328-1900
Facsimile: 205-328-6000
joshua.zugish@ogletree.com


Luke P. Donohue
GA Bar No. 193361
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
One Ninety One Peachtree Tower
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Telephone: 404-881-1300
Facsimile: 404-870-1732
luke.donohue@ogletree.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that on this 12th day of April, 2021, I filed a copy of the foregoing electronically with the Clerk of Court via the Court's ECF system, which caused a copy of same to be sent to all counsel of record with notice of case activity generated.


/s/ *Joshua B. Zugish*
Joshua B. Zugish
GA Bar No. 238831