**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

LISA LEE,

              Plaintiff,

      v.

MEDICREDIT, INC.,

              Defendant.

CIVIL ACTION NO.: 6:21-cv-16

## O R D E R

This case arises from Defendant Medicredit, Inc.'s attempts to collect a debt for medical services rendered to Plaintiff Lisa Lee.  Plaintiff initiated this action pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 *et seq.* ("GFBPA"), the Unfair and Deceptive Practices Toward the Elderly Act, O.C.G.A. § 10-1-850 *et seq.* ("UDPTEA"), and Georgia common law, alleging that Defendant unlawfully subjected her to efforts to collect a debt she does not owe.  (Doc. 6.)  Presently before the Court is Defendant's Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Procedure 12(b)(6).  (Doc. 10.)  For the reasons stated herein, the Court **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Dismiss.  (Id.)

## BACKGROUND

### I.    Factual Background

The following factual allegations are contained in Plaintiff's Amended Complaint or are apparent from the face of the documents attached as exhibits thereto.  Plaintiff is a natural person residing in Bulloch County, and Defendant is a debt collection company actively collecting debts

from Georgians residing in this district. (Doc. 6, pp. 2–3.) On January 17, 2019, Plaintiff received medical services at Doctors Hospital of Augusta ("Doctors Hospital") related to a pending disability claim with the Social Security Administration ("SSA"). (Id. at pp. 5–6; see also doc. 6-1, pp. 4, 6.) According to an appointment reminder sent to Plaintiff, Disability Adjudication Services ("DAS"), acting on behalf of the SSA, scheduled the appointment for "a medical examination to evaluate [Plaintiff's] physical condition." (Doc. 6-1, p. 6; see also doc. 6, p. 6.) The appointment reminder stated that the medical appointment would be "at no cost to [Plaintiff]." (Id.)

In the months following that appointment, Plaintiff received a bill from Doctors Hospital, which is not a party to this case, and letters from NPAS, Inc. ("NPAS"), a debt collection agency that is not a party to this case, indicating that there was an unpaid balance of $97.50 for the medical services rendered to her on January 17, 2019 ("the Debt"). (See doc. 6, pp. 6–7; doc. 6-1, pp. 4, 7–8.) The letter from NPAS listed DAS as Plaintiff's "primary insurance." (Doc. 6, pp. 6–7; doc. 6-1, pp. 7–8.) On August 6, 2019, Defendant sent Plaintiff a letter indicating that the Debt had "been placed with [Defendant]," requesting prompt payment, and notifying Plaintiff that the Debt would be assumed valid unless Plaintiff disputed it within 30 days. (Doc. 6-1, p. 3.) More than a month later, on September 10, 2019, an attorney representing Plaintiff regarding her Social Security disability claim (hereinafter "Attorney Goodman") sent Defendant a letter advising that Plaintiff was represented by counsel and that Defendant should not contact her and should instead direct any further communications to the attorney's office. (Id. at pp. 1–2; see also doc. 6, p. 7.) The letter also stated that Plaintiff "has no liability nor responsibility for this bill" because "the [SSA], through the [DAS], made this appointment in conjunction with her Social Security Disability Claim." (Doc. 6-1, p. 1.) The Complaint states that, soon thereafter, one of Defendant's

employees contacted Attorney Goodman advising him that Defendant had received his letter and that the Debt had been marked as "in a dispute status." (Doc. 6, p. 7.)  On September 22, 2019, Attorney Goodman received a letter from Defendant, written the day before, which stated, "We have received your dispute in regards to [the Debt] and are currently investigating the matter. There is no additional information or action needed from you at this time.  If it is determined that additional information is needed, someone will contact you."  (Id. at pp. 7–8; doc. 6-2, p. 1.)  Six days later, on September 27, 2019, Defendant sent another letter to Attorney Goodman, this time requesting "additional information" and directing counsel to call its office to "discuss the account." (Doc. 6, p. 8; doc. 6-3, p. 1.)  Then, on October 1, 2019, Defendant sent Attorney Goodman a nearly identical letter stating that Defendant needed more information and requesting that Plaintiff's counsel call Defendant at the toll-free number provided.  (Doc. 6, p. 8; doc. 6-4, p. 1.) Plaintiff does not allege that Attorney Goodman responded in any way to either of these letters. (See generally doc. 6.)

On May 8, 2020, Defendant sent a letter directly to Plaintiff which stated that "[t]his claim was filed with the insurance company and despite our efforts, we have been unable to obtain payment from them."  (Doc. 6, p. 9; doc. 6-5, p. 1.)  The letter requested that Plaintiff "contact [her] insurance company and ask them to pay any benefits due" and to "call [Defendant] so that [Defendant] may update the status of the account."  (Doc. 6-5, p. 1.)  The letter also stated that although Defendant was "committed to working with [Plaintiff] to obtain payment from the insurance company," Plaintiff "may be responsible for the entire balance of the account if the insurance company fails to pay the claim."  (Id.)  Nearly four months later, Plaintiff's current counsel (hereinafter "Attorney Daniels") sent Defendant a pre-suit demand asserting that Defendant violated federal and state law when it sent Plaintiff the May 8, 2020, letter and offering

3

to settle the dispute.  (Doc. 6, p. 10; doc. 6-6, pp. 1–3.)   About a week later, Defendant sent Attorney Goodman a letter which, like the letters Defendant sent him in September and October of 2019, stated that Defendant had "received [Plaintiff's] dispute," was "currently investigating the matter," and asked for additional information.  (Doc. 6, p. 10; doc. 6-7, p. 1.)

## II.     Procedural Background

Plaintiff filed this action alleging that Defendant's efforts to collect the Debt violated federal and state laws protecting consumers from abusive debt collection and unfair or deceptive business practices.  (Doc. 1.)   Defendant filed a Motion to Dismiss, (doc. 5), and Plaintiff subsequently filed the Amended Complaint, (doc 6).[1]  The Amended Complaint asserts: (1) a cause of action based on violations of various provisions of the FDCPA (Count I); (2) a cause of action based on a violation of the GFBPA (Count II); (3) a cause of action based on a violation of the UDPTEA (Count III); and (4) a common law tort claim (Count V).  (Doc. 6, pp. 12–15, 17.) Plaintiff further seeks punitive damages and equitable relief under the GFBPA (Count IV).[2]  (Id. at pp. 15–16.)   Accordingly, Plaintiff requests actual and statutory damages as well as reasonable attorneys' fees and costs under the FDCPA and GFBPA; "exemplary," punitive, and treble damages under the UDPTEA and GFBPA; equitable relief under the GFBPA; tort damages; interest; and a judgment offsetting any tax liability Plaintiff incurred in enforcing the FDCPA.  (Id. at pp. 12–18.)

---

[1]  The Court previously held that Defendant's Motion to Dismiss the original Complaint, (doc. 5) was mooted by the Amended Complaint, which is the sole operative pleading in this case.  (Doc. 11.)

[2]  Although Plaintiff listed her claims for punitive damages and for equitable relief under the GFBPA separately, both are labeled as "Count IV."  (Doc. 6, pp. 15–16.)  Additionally, Plaintiff's common law tort claim, which is the sixth separately listed count, is labeled "Count V."  (Id. at p. 17.)

Concerning the FDCPA, Plaintiff specifically alleges that Defendant violated: (1) Sections 1692e(2)(A) and 1692f(1) "by seeking to collect amounts [it] was not authorized to collect"; (2) Section 1692c "by sending the May 8, 2020[,] dunning letter directly to [her]," and "by communicating with [her] in an inconvenient time, manner, or place" when it sent the September 18, 2020, letter to her former counsel; (3) Section 1692f "by engaging in debt collection practices designed to treat [her] in an unfair and unconscionable manner"; and (4) Section 1692g "by seeking to collect disputed amounts without first validating the debt." (<u>Id.</u> at pp. 12–13.) Plaintiff's statutory state law claims under the GFBPA and UDPTEA ultimately hinge upon the alleged violations of the FDCPA. (<u>Id.</u> at pp. 14–15.) Concerning the GFBPA, Plaintiff alleges that Defendant violated the GFBPA "by violating the FDCPA" and by intentionally and willfully "treat[ing] [her] in an unfair manner in connection with a consumer transaction." (<u>Id.</u> at p. 14.) Concerning the UDPTEA, Plaintiff alleges that, pursuant to O.C.G.A. § 10-1-853, Defendant's violation of the GFBPA constitutes a violation of the UDPTEA because Plaintiff is both a "disabled" and "elderly" person, as those terms are defined in O.C.G.A. § 10-1-850. (<u>Id.</u> at p. 15.) Finally, concerning Plaintiff's common law tort claim, Plaintiff alleges that Defendant violated her right to be free from "unreasonable bill-collection procedures" by attempting to collect the Debt through the use of "improper, false, deceptive, and/or misleading representations regarding the Debt." (<u>Id.</u> at p. 17.)

Shortly after Plaintiff filed the Amended Complaint, Defendant filed the currently pending Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) Plaintiff filed a Response, (doc. 12), and Defendant filed a Reply, (doc. 14).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenant "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft, 556 U.S. at 678. Moreover, a complaint that "tenders naked assertions devoid of further factual enhancement" or solely pleads facts which are "merely consistent with a defendant's liability" fails to state a claim. Id. (internal quotations and citations omitted).

In general, when deciding a Rule 12(b)(6) motion to dismiss, the Court must "limit[ ] its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).  Federal Rule of Civil Procedure 12(d) states that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed R. Civ. P. 12(d); see SFM Holdings, Ltd. v. Banc of Am. Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010).  However, the "incorporation by reference" doctrine provides an exception for documents which are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." Hi-Tech Pharms., Inc. v. HBS Int'l Corp., 910 F.3d 1186, 1189 (11th Cir. 2018); see also Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents

in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents . . . and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (noting that the Court of Appeals for the Eleventh Circuit has adopted the incorporation by reference doctrine in the context of Rule 12(b)(6)).

## DISCUSSION

### I.     Plaintiff's Claims Under the FDCPA

#### A.     Legal Standard for FDCPA Claims Generally

"The FDCPA was enacted to eliminate abusive, deceptive, and unfair debt collection practices by debt collectors." Brown v. Credit Mgmt., LP, 131 F. Supp. 3d. 1332, 1338 (N.D. Ga. 2015) (citing LeBlanc v. Unifund CCR Partners, 601 F.3d 1185, 1190 (11th Cir. 2010) (per curiam)). To prevail on an FDCPA claim, a plaintiff must establish that

> (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a "debt collector" under the [FDCPA]; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA.

Id. Defendant does not contest Plaintiff's allegations that she has been the object of a collection activity arising from a consumer debt or that it qualifies as a "debt collector." (See doc. 6, p. 12; see generally doc. 10.)  However, Defendant does argue that Plaintiff fails to state a claim that Defendant committed any acts or omissions prohibited by the FDCPA.  (See generally doc. 10.)

#### B.     Sections 1692e and 1692f

Section 1692e of the FDCPA prohibits debt collectors from making false representations regarding "the character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Section 1692f proscribes the "use [of] unfair or unconscionable means to collect or attempt to collect any debt," including, among other prohibited conduct, efforts to collect "any amount . . . unless such

amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

Plaintiff claims that Defendant violated Sections 1692e(2) and 1692f(1) "by seeking to collect amounts Defendant was not authorized to collect."[3] (Doc. 6, p. 12.)  Defendant argues that the Amended Complaint fails to state a claim under these provisions because "each of [these claims] turns on the . . . premise that [Defendant] attempted to collect from her a debt she did not owe," and Plaintiff did "not allege facts showing that [she] did not owe the Debt." (Doc. 14, p. 3; doc. 10, p. 6; see also doc. 14, pp. 1–3; doc. 10, p. 12.)  Specifically, Defendant contends that Plaintiff offers, without any authority, "only the conclusion that 'the [SSA] was responsible for paying' the debt because [Plaintiff] 'was a disabled person with a pending Social Security Disability Claim.'" (Doc. 10, p. 7 (quoting doc. 6, pp. 6, 11).)  Plaintiff argues that she stated a claim under Sections 1692e and 1692f because the appointment reminder from DAS and other documents attached to her pleadings show that "there is clearly a factual dispute as to her liability for any alleged debt owed to Defendant."  (Doc. 12, p. 6.)  Additionally, Plaintiff argues that the SSA or its designee is responsible for paying for her medical services because those services were a mandatory part of the SSA's claims process.  (Id.)  The Court will analyze the claim under each of the two FDCPA sections in turn.

---

[3]  Plaintiff also claims, more generally, that Defendant violated Section 1692f by "engaging in debt collection practices designed to treat [her] in an unfair and unconscionable manner."  (Doc. 6, p. 13.)  Because Plaintiff did not identify any specific misconduct or explain how Defendant treated her in an unfair or unconscionable manner, she has failed to state a claim under Section 1692f.  Brown, 131 F. Supp. 3d at 1342 ("Plaintiff's failure to identify how the calls were unfair and unconscionable warrants dismissal of this claim."); see Chalik v. Westport Recovery Corp., 677 F. Supp. 2d 1322, 1330 (S.D. Fla. 2009) ("Because Plaintiff failed to specifically identify how Defendants' conduct was also unfair or unconscionable under [Section] 1692f, dismissal of this claim is warranted.").

### 1.    Plaintiff Fails to State a Claim Under Section 1692e

Plaintiff claims that Defendant violated Section 1692e(2)(A) "by seeking to collect amounts Defendant was not authorized to collect." (Doc. 6, p. 12.)  "A debt collector is liable under Section 1692e(2) of the FDCPA if it falsely represents the character, amount, or legal status of a debt." Carlisle v. Nat'l Com. Servs., Inc., No. 1:14-cv-515-TWT-LTW, 2017 WL 1075088, at *6 (N.D. Ga. Feb. 22, 2017) (citing 15 U.S.C. § 1692e(2)(A)).  The Eleventh Circuit looks to the "least sophisticated consumer" when determining whether a debt collector's conduct was false or misleading under Section 1692e. Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1175 (11th Cir. 1985).  Thus, in order to state a claim under Section 1692e(2)(A), Plaintiff must plausibly allege that Defendant's representations "would tend to mislead the least sophisticated consumer as to the character or legal status of the debt to be collected." Palmer v. Dynamic Recovery Sols., LLC, No. 6:15-cv-59-ORL-40KRS, 2016 WL 2348704, at *3 (M.D. Fla. May 4, 2016); see also Taylor v. Heath W. Williams, L.L.C., 510 F. Supp. 2d 1206, 1211 (N.D. Ga. 2007) ("To state a valid claim under [Section 1692e], . . . a plaintiff must show only that the misrepresentation would have deceived or misled the least sophisticated consumer.").

The Court finds that the Amended Complaint fails to state a claim under Section 1692e because it contains no allegations that Defendant made representations concerning the "character, amount, or legal status" of the Debt that were false or misleading.  Cf. Taylor, 510 F. Supp. 2d. at 1211 (permitting claim for violation of Section 1692e(2)(A) to proceed where the plaintiff alleged particular instances in which the debt collector misrepresented the amount of the debt).  Rather, Plaintiff's entire Section 1692e claim is based entirely on her conclusory allegation that Defendant sought to collect "amounts Defendant was not authorized to collect" from her.  (Doc. 6, p. 12.) However, an "allegation that the debt sought to be collected is not owed, standing alone, cannot form a basis for a 'false and misleading practices' claim under [Section 1692e]." Bleich v.

Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002). Moreover, as stated in Discussion Section I.B.2 infra, Plaintiff has failed to allege facts which plausibly show that Defendant was not authorized to collect the Debt. Accordingly, Plaintiff's Section 1692e claim must be dismissed.

### 2.    Plaintiff Fails to State a Claim under Section 1692f(1)

Similarly to her Section 1692e claim, in support of her Section 1692f(1) claim, Plaintiff asserts that Defendant sought "to collect amounts Defendant was not authorized to collect." (Doc. 6, p. 12.) To state a viable claim under Section 1692f(1), a plaintiff must plausibly allege that "the agreement [creating the debt] does not expressly authorize . . . the amounts sought," or that the defendant was prohibited by law from collecting the debt. Allen, 629 F.3d at 369; see 15 U.S.C. § 1692f(1) (prohibiting "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law"). Plaintiff has not plausibly alleged either type of violation. First, Plaintiff has not alleged much of anything about the agreement creating the Debt, much less that it prohibits Defendant from collecting the amount owed for medical services rendered in connection with a Social Security Disability claim directly from the patient who received the services.[4] Indeed, the documents attached to the Amended

---

[4] In fact, Plaintiff did not refer to or identify the "agreement creating the debt" in the Amended Complaint, nor did she attach a copy of any agreement thereto. Defendant, however, attached a document entitled "Conditions of Admission and Consent for Outpatient Care" (the "Consent Form") as an exhibit to its Motion to Dismiss. (See doc. 10-1 (document bearing Plaintiff's signature and stating, "I agree that, except where prohibited by law, the financial responsibility for the services rendered belongs to me, the Patient or Guarantor. I agree to pay for services that are not covered and covered charges not paid in full by insurance coverage . . . .").) Defendant argues that the Consent Form shows Plaintiff "promised to pay for the services she received," disproving her claim that Defendant tried to collect from her on a debt she did not owe. (Doc. 10, pp. 7–8.) Because Plaintiff did not attach a copy of the Consent Form to her pleadings, the Court may only consider it at this stage of the litigation without converting Defendant's Motion to Dismiss into a motion for summary judgment if the Amended Complaint incorporates the document by reference. See Fed. R. Civ. P. 12(d). The Court is dubious about the applicability of the incorporation by reference doctrine to the Consent Form, however, because Plaintiff never referred to it in the Amended Complaint. See Hi-Tech Pharms, 910 F.3d at 1189; see also Laskar v. Peterson, 771 F.3d 1291, 1295 n.3 (11th Cir. 2014) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they

Complaint that, according to Plaintiff, purportedly show that the SSA was responsible for the Debt do not expressly relieve Plaintiff of any responsibility for the Debt should the SSA fail to pay. (See doc. 6-1, pp. 6–8.)  Additionally, Plaintiff has alleged no facts to support her legal conclusion that it is unlawful to collect unpaid medical expenses rendered during a DAS-scheduled appointment from a "disabled person with a pending Social Security Disability claim."  (Doc. 10, p. 7; see doc 6, p. 11.)  "[C]ourts are 'not bound to accept as true a legal conclusion couched as a factual allegation.'"  Rhodes v. Embry-Riddle Aeronautical Univ., Inc., 513 F. Supp. 3d 1350, 1354 (M.D. Fla. 2021) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  Additionally, while Plaintiff attached the *appointment reminder* that noted that her medical evaluation at Doctors Hospital would be at "no cost" to her, she neither alleges nor cites to any authority suggesting that a document of this sort is legally binding.[5]  Therefore, the Court finds that Plaintiff has failed to state a claim under Section 1692f(1).

---

are referred to in the plaintiff's complaint and are central to her claim.") (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)); see also GFF Corp. v. Assoc. Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not . . . attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."). Furthermore, Plaintiff has at least attempted to dispute the Consent Form's authenticity.  (See doc. 12, p. 4 (arguing that it is unclear whether the Consent Form represents the "agreement between Plaintiff and the healthcare providers listed in the dunning letters" because it is "replete from [sic] any information identifying the healthcare provider"); doc. 10-1); see also Kalpakchian v. Bank of Am. Corp., 832 F. App'x 579, 583 (11th Cir. 2020) ("To inform the district court that the document could not properly be considered at the motion to dismiss stage, Kalpakchian was required to dispute the document in some way.").  The Court need not, however, decide this issue as the Court finds Plaintiff's claims for violations of Section 1692e and 1692f are subject to dismissal on other grounds, regardless of what the Consent Form might show.

[5]  In fact, the SSA website Plaintiff cites for the proposition that the SSA is obligated to pay for medical services rendered during DAS-scheduled appointments suggests the opposite.  (See doc. 12, p. 6 ("Social Security can pay a reasonable amount for reports of existing medical evidence it requests from physicians/psychologists, hospitals and other non-Federal providers of medical services.  Contact your DDS for its payment information.") (emphasis added) (quoting Answers for Doctors & Other Health Professionals, Social Security, https://www.ssa.gov/disability/professionals/answers-pub042.htm).)

**C.      Section 1692c(a)(1)**

Section 1692c(a)(1) prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer." 15 U.S.C. § 1692c(a)(1). Plaintiff alleges that Defendant "communicat[ed] with [her] in an inconvenient time, manner, or place" in violation of Section 1692c(a)(1) when it sent the September 18, 2020, dunning letter to Attorney Goodman despite having been informed that Plaintiff was represented by Attorney Daniels.  (Doc. 6, p. 13.)  Defendant argues that Plaintiff failed to state a claim under Section 1692c(a)(1) because Plaintiff did not plausibly allege that "[Defendant] knew or should have known that writing to [Attorney] Goodman was inconvenient to the Plaintiff."  (Doc. 10, p. 9.) Defendant contends that it merely "complied with [Attorney Goodman's] instruction to communicate only with [him]," and Defendant alleged no facts that she herself—rather than her attorney—suffered any inconvenience.  (Id. at p. 6; see id. at pp. 9–10.)  Moreover, Defendant argues that it could not have violated Section 1692c(a)(1) by contacting Attorney Goodman rather than Attorney Daniels because a communication sent to a consumer's attorney cannot serve as the basis for a claim under Section 1692c.  (Id. at p. 9.)  According to Defendant, debt collectors may freely communicate with a consumer's attorney because "the term 'consumer' does not include the consumer's attorney."  (Id. (citing Tinsley v. Integrity Fin. Partners, Inc., 634 F.3d 416, 418–19 (7th Cir. 2011).)  The Court agrees, and, therefore, finds that Plaintiff has failed to state a claim for a violation of Section 1692c(a)(1).

The pre-suit demand sent by Attorney Daniels states, "Please be advised that this law firm . . . represents [Plaintiff] with respect to the above-listed account.  As you are aware, [Attorney Goodman] previously informed you that . . . his office *was* representing her with respect to this

account." (Doc. 6-6, p. 1 (emphasis added).) Additionally, the pre-suit demand contains an offer of settlement with a thirty-day expiration date, lists the mailing address and phone number of Attorney Daniels' office, and concludes by stating, "I look forward to hearing from you soon." (Id. at pp. 1–3.) Nine days later, Defendant sent Attorney Goodman a letter stating that it "received your dispute." (Doc. 6-7, p. 1.) Based on this exchange, it is plausible that Defendant knew or reasonably should have known Attorney Daniels represented Plaintiff with respect to the Debt and that it should direct future communications to him rather than Attorney Goodman. See Drew v. Mamaroneck Cap., LLC, No. 5:17-CV-149 (MTT), 2017 WL 4018854, at *3 (M.D. Ga. Sep. 12, 2017) (finding inconvenience where the consumer "expressly requested the Defendants to send future communication to the Rochelle address, but the Defendants ignored her request and still sent their response letter to an address in Pitts, Georgia."). Notwithstanding, Defendant correctly points out that Plaintiff failed to allege that she herself was inconvenienced when Defendant sent its response to the pre-suit demand letter to Attorney Goodman.[6] (See doc. 10, p. 9.) Even if she had, Eleventh Circuit case law suggests that, in order to state a claim under Section 1692c(a)(1), plaintiff-consumers must allege that the debt collectors communicated directly with them—not their attorneys or some third party—in an unusual or inconvenient manner. In Miljkovic v. Shafritz & Dinkin, P.A., the Eleventh Circuit clarified that Section 1692c "protect[s] only consumers and those individuals enumerated in [Section] 1692c(d)." 791 F.3d 1291, 1301 (11th Cir. 2015). Section 1692c(d), which contains a unique definition of "consumer" applicable only to Section 1692c, plainly does not include a consumer's attorney. See 15 U.S.C. § 1692c(d) ("For the purpose of this section, the term 'consumer' includes the consumer's spouse, parent (if the consumer is a

---

[6] The Amended Complaint indicates that Attorney Goodman continued to represent Plaintiff with regard to her Social Security disability claim, including at the time the September 18, 2020 letter was sent to him. (See doc. 6, p. 10.)

minor), guardian, executor, or administrator."); see also Russello v United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (alteration in original).   Moreover, as the Seventh Circuit Court of Appeals found, "[Section] 1692c as a whole permits debt collectors to communicate freely with consumers' lawyers." [7] Tinsley, 634 F.3d at 419.  For example, attorneys are expressly excepted from Section 1692c(b)'s prohibition on communications between debt collectors and third parties.  See 15 U.S.C. § 1692c(b) ("[A] debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, *his attorney*, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.") (emphasis added).   Additionally, Section 1692c(a)(2) actually *compels* debt collectors to communicate exclusively with a consumer's attorney once it knows or reasonably should know that the consumer is represented by legal counsel.  See 15 U.S.C. § 1692c(a)(2); see also Tinsley, 634 F.3d at 418–19 ("[T]he point of subsection (a)(2) is to tell the debt collector that it is OK to communicate with the debtor's attorney

---

[7] Plaintiff argues that Tinsley is inapplicable because, unlike in the Seventh Circuit, a "communication sent to an attorney is . . . a communication sent to a consumer" in the Eleventh Circuit.  (Doc. 12, p. 8.)  For support, Plaintiff relies on Bishop v. Ross Earle & Bonan, P.A., in which the Eleventh Circuit held that communications directed to an attorney in connection with a debt are actionable under Section 1692g of the FDCPA, 15 U.S.C. § 1692g.  817 F.3d 1268, 1271–73 (11th Cir. 2016); (see doc. 12, p. 8.)  Plaintiff's argument lacks merit.   Neither Bishop nor Miljkovic, the case upon which Bishop primarily relies, were decided in the context of Section 1692c.  See Bishop, 817 F.3d at 1271 ("Following Miljkovic, we conclude that the protections of [Section] 1692g, like those set forth in [Sections] 1692d–1692f, do not fail simply because the consumer has retained an attorney."); Miljkovic, 791 F.3d at 1300 ("[Section] 1692c . . . is not at issue here. . . .  [T]he provisions that are at issue here[] are [Sections] 1692d–1692f . . . .").  Moreover, Plaintiff apparently ignores that in Miljkovic, the Eleventh Circuit expressly distinguished Section 1692c from Sections 1692d–1692f.  See 791 F.3d at 1301 ("In contrast to other provisions, [Section] 1692c explicitly refers to the 'consumer' and clearly and necessarily distinguishes 'consumers' from 'attorneys' and other third parties.  It is thus understood to protect only consumers and those individuals enumerated in [Section] 1692c(d).").  Therefore, the Court finds Tinsley applicable.

even when it is forbidden to communicate with the debtor.").  Thus, because Plaintiff's Section 1692c(a)(1) claim is based on an allegedly inconvenient communication sent to Attorney Goodman—who is not a "consumer" under Section 1692c(d)— Plaintiff has failed to state a claim under Section 1692c(a)(1).  See Ismail v. Ascensionpoint Recovery Servs., LLC, No. 2:18-cv-01345-JHE, 2019 WL 5894311, at *8 (N.D. Ala. Nov. 12, 2019) ("Since the Estate is not a 'consumer,' APRS did not violate [Section] 1692c by sending the Letter.").

### D.      Section 1692c(a)(2)

Pursuant to Section 1692c(a)(2) of the FDCPA,

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt–
>
> . . .
>
>> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer . . . .

15 U.S.C. § 1692c(a)(2).  Accordingly, in order to state an actionable claim for violation of this section, Plaintiff must have alleged "that (1) [s]he was represented by an attorney with respect to the debt, (2) the defendant knew [s]he was represented by an attorney with respect to the debt, (3) the defendant communicated with [her], and (4) the defendant was not authorized to communicate with [her], either by consent or by a court."  Montgomery v. Shermeta, Adams & Von Allmen, 885 F. Supp. 2d 849, 854–55 (W.D. Mich. 2021).   In various parts of the Amended Complaint, Plaintiff alleged that (1) she had legal counsel who responded to Defendant's August 6, 2019 communication on her behalf, (doc. 6, p. 7); (2) "Defendant knew [that] [she] was represented by counsel" on May 8, 2020, (id. at p. 10); (3) "Defendant violated [Section] 1692c by sending the May 8, 2020 dunning letter directly to [her] in violation of [Section] 1692c(a)(2)," (id. at p. 12);

and (4) "Defendant did not have permission to directly contact [her] on May 8, 2020," (id. at p.

10).  While the Amended Complaint is by no means a paragon of pleading,[8] the Court finds that

Plaintiff has asserted the necessary elements to state a claim for violation of Section 1692c(a)(2)

of the FDCPA.

Defendant, in its Motion to Dismiss, does not take issue with the allegations that it sent the

May 8, 2020, dunning letter to Plaintiff and that it knew Plaintiff was represented by Attorney

Goodman at that time.  However, it relies an exception within Section 1692c(a)(2) that allows a

debt collector to contact a represented consumer directly when "the attorney fails to respond within

a reasonable period of time to a communication from the debt collector." 15 U.S.C. § 1692c(a)(2).

Defendant argues that Plaintiff has failed to state a claim under Section 1692c(a)(2) because she

"does not allege that [Attorney] Goodman responded to [Defendant's] letters to him at all, much

less 'within a reasonable period of time.'" (Doc. 10, p. 10.)  Defendant, however, does not point

the Court to any authority indicating that a plaintiff asserting a claim for violation of Section

1692c(a)(2) must affirmatively allege facts disproving the exceptions that are available in that

Section.  Quite to the contrary, "the burden of [pleading or] proving justification or exemption

under a special exception to the prohibitions of a statute generally rests on one who claims its

benefits." FTC v. Morton Salt Co., 334 U.S. 37, 44–45 (1948); Meacham v. Knolls Atomic Power

Lab., 554 U.S. 84, 91 (2008) (repeating "the familiar principle that '[w]hen a proviso . . . carves

an exception out of the body of a statute . . . those who set up such exception must prove it'")

(quoting Javierre v. Cent. Altagracia, 217 U.S. 502, 508 (1910)); Evankavitch v. Green Tree

Servicing, LLC, 793 F.3d 355, 367 (3d Cir. 2015) (determining that debt collector bears burden of

---

[8]  For example, Plaintiff's Amended Complaint contains unnecessary commentary and criticisms about the debt collection industry as a whole, and Plaintiff asserts violations of a variety of sections of the FDCPA—many based on different, discrete acts by Defendant—all within a single count (Count I).

proving applicability of exception provided in Section 1692c(b) because, "absent compelling reasons to the contrary, a party seeking shelter in an exception to a statute has the burden of proving it"); United States v. Taylor, 686 F.3d 182, 190 & n. 5 (3d Cir. 2012) (compiling "numerous Supreme Court decisions" for the proposition that, "where the statute contains . . . an exception, the defendant bears the burden of proving it"); see also Taylor v. Sturgell, 553 U.S. 880, 907 (2008) (stating that when a party seeks shelter in an affirmative defense it is "[o]rdinarily . . . incumbent on the defendant to plead and prove such a defense"); United States v. Franchi–Forlando, 838 F.2d 585, 591 (1st Cir. 1988) (Breyer, J.) (stating that introducing provisions with the words "unless" and "except" may indicate an affirmative defense).  Accordingly, Plaintiff has alleged the essential elements to state a claim for violation of Section 1692c(a)(2).  On the pleadings at issue here, the Court cannot resolve at the motion to dismiss stage Defendant's argument that it could contact Plaintiff directly because Attorney Goodman failed to respond within a reasonable period of time. That question must be resolved at a later stage of the proceedings.[9]  In light of the foregoing, the Court permits Plaintiff's claim for violation of Section 1692c(a)(2) to proceed.

---

[9]  Defendant does not simply argue that Plaintiff's claim fails because she neglected to plead the inapplicability of the exception.  Defendant goes far further and urges the Court to find that the pleadings and documents attached thereto prove, as a matter of law, that the exception applies.  (Doc. 10, pp. 10–11.) Defendant points to a series of letters (attached to the Amended Complaint) sent to Attorney Goodman in September and October of 2019, asking him to call Defendant to provide more information about the debt. (Id.; see also doc. 6-2, p. 1; doc. 6-3, p.1; doc. 6-4, p. 1; doc. 6-5, p. 1.)  Because these letters were sent more than seven months before Defendant sent the at-issue May 8, 2020, letter directly to Plaintiff, Defendant argues that the Court must conclude that Attorney Goodman failed to respond within a reasonable period of time and that Defendant was therefore permitted to send communications directly to Plaintiff.  The Court, however, sees no basis, at this stage of the proceedings, for it to make such a ruling. First, nothing in the Amended Complaint or the documents attached thereto conclusively proves that Attorney Goodman failed to "respond" within a reasonable period of time; Plaintiff does not assert that Attorney Goodman neglected to contact Defendant, and there could exist written correspondence sent by Attorney Goodman to Defendant between September 2019 and May 2020 that Plaintiff either does not possess or did not choose to attach to her Complaint, or there may exist evidence that Attorney Goodman called Defendant on the telephone (which is what the two letters asked him to do).  Additionally, even if it was conclusively shown that Attorney Goodman failed to respond for seven months, the statute does not define what length of time constitutes a "reasonable period of time," and Defendant has not cited any

E.      Section 1692g

In the Amended Complaint, Plaintiff alleges that Defendant violated Section 1692g of the FDCPA "by seeking to collect disputed amounts without first validating" the Debt.  (Doc. 6, p. 13.)  Defendant argues that Plaintiff fails to state a claim under Section 1692g because Plaintiff did not allege that she timely disputed the debt or demanded verification thereby triggering the requirement that the Debt be validated. (Doc. 10, pp. 11–12.)  According to Defendant, the exhibits to the Amended Complaint show that "Plaintiff's dispute was mailed more than thirty days after [Defendant's] initial communication [on August 09, 2019,] and Plaintiff does not allege otherwise." (Id. at p. 12.)  The Court agrees, and, therefore, dismisses Plaintiff's Section 1692g claim.

Section 1692g(b) provides that if a consumer disputes a debt in writing within thirty days after receiving a notice of the debt meeting the requirements of Section 1692g(a), then the debt collector must cease collection efforts until it receives verification of the debt and mails it to the consumer.  See Bishop, 817 F.3d. at 1272 n.3 (citing 15 U.S.C § 1692g(b)).  Pursuant to Section 1692g(a), to trigger the thirty-day dispute period, the notice of debt must include, among other things, the amount of the debt, the name of the creditor, and "a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." 15 U.S.C. § 1692g(a).  Thus, to state a claim pursuant to Section 1692g(b), the plaintiff-consumer must plausibly allege that he or she disputed the debt or any portion thereof within thirty days of receipt of the notice of the debt.  See

---

authority permitting or requiring the Court to find that seven months was a reasonable period of time pursuant to Section 1692c(a)(2).

<u>Abdullah v. Ocwen Loan Servicing, Inc.</u>, No. 5:12–cv–369 (CAR), 2014 WL 4851760, *5 (M.D. Ga. Sept. 29, 2014).

Here, as alleged and as shown through the exhibits to the Amended Complaint, Defendant's initial contact with Plaintiff occurred when it sent Plaintiff a dunning letter on August 6, 2019, which contained (1) the amount of the Debt, (2) the name of the creditor, and (3) a notice that Defendant would verify the Debt if Plaintiff disputed it within thirty days.  (Doc. 6, p. 7; <u>see</u> doc. 6-1, p. 3).  Plaintiff does not dispute that this initial communication constituted a proper notice of the Debt pursuant to Section 1692g(a), nor does she point to some different communication (sent at a later date) that she contends triggered the thirty-day period.  Notably, while the thirty-day dispute period begins when notice is received, Plaintiff did not allege a specific date upon which she claims to have received the dunning letter.  On September 10, 2019, thirty-five days after Defendant sent the dunning letter, Attorney Goodman sent Defendant a dispute letter.  (<u>Id.</u>; <u>see also</u> doc. 6–1, p. 5.)  Even applying a three-day "mailbox rule" to account for the time it could have taken for the letter to reach Plaintiff, the Amended Complaint indicates that Attorney Goodman sent the dispute letter after the thirty-day deadline.  <u>See, e.g.</u>, <u>Baldwin County Welcome Ctr. v. Brown</u>, 466 U.S. 147, 104 (1984) (presuming a right-to-sue letter was received three days from when it was issued).  Plaintiff does not directly allege or even offer a theory that her dispute letter was somehow timely sent.[10]  Therefore, based on the allegations in the Amended Complaint and the contents of the documents attached thereto, Plaintiff has failed to state a claim for a

---

[10]  In her Response in opposition to the Motion to Dismiss, Plaintiff weakly argues that it is "unclear" whether Defendant "actually mailed the August 6, 2019 letter" on that date.  (Doc. 12, p. 8.)  This assertion directly conflicts with Plaintiff's own allegation in the Amended Complaint, that, "[o]n August 6, 2019, Defendant sent Plaintiff a dunning letter seeking to collect the Debt," (doc. 6, p. 7).  Moreover, as already stated, the thirty-day dispute period begins when notice is received, not when it is sent, and Plaintiff—the party most likely to possess that information—failed to allege when she received it.  (<u>See generally</u> doc. 6.)

violation of Section 1692g because she has failed to plead factual content that allows a reasonable inference that she timely disputed the debt.  See Iqbal, 556 U.S. at 678; see also Richmond v. Higgins, 435 F.3d 825, 829 (8th Cir. 2006) ("Albright did not dispute the debt amount within thirty days of receipt of the letter.  In fact, Higgins did not receive notice that the debt was disputed until almost six months later, on April 1, 2003.  Accordingly, Higgins was permitted under the FDCPA to assume that the debt was valid.").

Nonetheless, Plaintiff contends that Defendant was required to verify the debt before restarting the collection process because "Defendant treated the September 10, 2019 dispute letter as a dispute sent pursuant to [Section] 1692g."  (Doc. 12, p. 8 (citing docs 6-2, 6-3, and 6-4, all of which state, "We have received your dispute . . . and are currently investigating the matter").)  This argument lacks merit.  First, nothing in Section 1692g(b) suggests that a debt collector must cease collection efforts and validate a debt if it acknowledges receipt of an untimely dispute of a debt and states that it is investigating the matter.  See Richmond, 435 F.3d at 829 n.5 ("The FDCPA does not speak to whether the protections provided under [Section] 1692g(b) attach if the debtor disputes the debt after the expiration of the thirty-day period.").  Moreover, the only case upon which Plaintiff relies, Young v. G.L.A. Collection Company, does not address this issue and is distinguishable on its facts.  No. 1:11–cv–489–WTL–MJD, 2011 WL 6016650 (S.D. Ind. Dec. 1, 2011); (see doc. 12, p. 9.)  In Young, a debt-collector sent two successive letters notifying the consumer that they had thirty-days to dispute the debt.  2011 WL 6016650, at *1.  The plaintiff alleged that this violated Section 1692g because "an unsophisticated consumer would be confused as to the boundaries of the thirty day [dispute] period."  Id. at *2.  The court held that this did not violate Section 1692g because "receipt of the second notice . . . [did] not in any way hamper the unsophisticated debtor's exercise of her right to request validation of the debt."  Id. at *3.  Here,

Plaintiff does not allege that Defendant sent her duplicative notices of her opportunity to dispute the Debt.  Furthermore, Plaintiff's Section 1692g claim is that Defendant failed to validate the debt before resuming collection efforts, not that Defendant sent confusing communications or hindered her ability to dispute the Debt within thirty days.  Accordingly, Plaintiff's Section 1692g claim is dismissed.

## II.   Plaintiff's State Law Claims Under the GFBPA and UDPTEA

Plaintiff asserts two statutory state law claims: a violation of the GFBPA and a violation of the UDPTEA.  (Doc. 6.)  As alleged in the Amended Complaint, both claims are derivative of her FDCPA claims.  (Id. at pp. 14–15 ("Defendant violated the [GFBPA] by violating the FDCPA. . . . [B]y violating the [GFBPA][,] . . . Defendant also violated the UDPTEA")).  "[A] federal FDCPA claim may serve as a predicate offense under the [GFBPA], which itself may serve as a predicate under the UDPTEA."  Ramirez v. LTD Fin. Servs., L.P., No. 119-cv-02575-CAP-RDC, 2021 WL 5027860, at *11 (N.D. Ga. July 16, 2021).  Indeed, the Eleventh Circuit has held that "a violation of the FDCPA constitutes a violation of the GFBPA."  Harris v. Liberty Cmty. Mgmt., Inc., 702 F.3d 1298, 1303 (11th Cir. 2012) (citing 1st Nationwide Collection Agency v. Werner, 654 S.E.2d 428 (Ga Ct. App. 2007)).  Additionally, to state a claim for enhanced penalties under UDPTEA, a party must plausibly allege a violation of the GFBPA and that he or she is "a disabled person or elder person."  Horne v. Harbour Portfolio VI, LP, 304 F. Supp. 3d 1332, 1344 (N.D. Ga. 2018); see also Jackson v. Premium Cap. Funding, LLC, No. 109-CV-01392-CAM-GGB, 2009 WL 10682218, at *4 (N.D. Ga. Nov. 24, 2009) ("Plaintiffs' claim under the [UDPTEA] is dependent on a finding that Defendants violated the [GFBPA].").

As set forth in Discussion Section I, supra, Plaintiff has stated a claim for a violation of Section 1692c(a)(2) of the FDCPA.  Accordingly, Plaintiff has stated a claim for a violation of the

GFBPA.  See Boswell v. Bonial & Assocs., No. 3:19-cv-00112-TCB-RGV, 2021 WL 5033991, at

*11 (N.D. Ga. June 28, 2021) ("[S]ince Boswell has stated a plausible claim against Bonial under

[Section] 1692e of the FDCPA, and a violation of the FDCPA constitutes a violation of the

GFBPA, it follows that he also has stated a plausible claim for relief under the GFBPA.") (internal

quotations and citations omitted).  Furthermore, since Plaintiff alleges that she is an "elderly

person" and "disabled person" as those terms are defined in the UDPTEA, she has stated a claim

under the UDPTEA.  (Doc. 6, p. 15 (citing O.C.G.A. §§ 10-1-850)); cf. Horne, 304 F. Supp. 3d at

1344–45 (concluding that although the plaintiff "sufficiently stated a claim under the [GFBPA]

and [could] therefore bring a claim for additional civil penalties under UDPTEA," she failed to

state a claim under UDPTEA because the complaint contained "no allegations that she [was] a

disabled person or elder person").

**III.    Plaintiff's Common Law Tort Claim**

Plaintiff alleges that Defendant violated her "common law right to be free from

'unreasonable bill collection procedures.'"  (Doc. 6, p. 17 (quoting Dolanson Co. v. Citizens & S.

Nat'l Bank, 251 S.E.2d 274, 275 (Ga. 1978)).)  Specifically, Plaintiff alleges that "Defendant's

improper, false, deceptive, and/or misleading representations and communications" caused her

emotional harm.  (Id. at p. 11.)  Defendant does not dispute that such a right of action exists.

However, Defendant contends that Plaintiff "has not alleged [that Defendant] made any false

statements because she has not sufficiently alleged facts showing that she did not owe the debt."

(Doc. 10, p. 13.)  Furthermore, Defendant argues that Plaintiff fails to state a claim because the

Amended Complaint "omits any allegation that [Defendant] ever made threats or harassing

telephone calls to her."  (Id. at p. 14.)  The Court finds that Plaintiff did not plausibly allege that

Defendant engaged in the type of conduct necessary to support her claim. Accordingly, Plaintiff's tort claim is dismissed.

The Supreme Court of Georgia has recognized a common law tort action for consumers who have been subjected to threatening or abusive collection procedures. Dolanson, 251 S.E.2d at 277–78 ("[U]nreasonable bill-collection procedures, e. g., making false statements, threats, and harassing telephone calls, do constitute an actionable tortious wrong."). It is well-established that, in order for a plaintiff to recover in tort for emotional injuries, they must allege that the defendant engaged in intentional or reckless conduct which was "extreme and outrageous." Phillips v. Pac. & S. Co., 451 S.E.2d 100, 102 (Ga Ct. App. 1994). Thus, plaintiffs wishing to recover for emotional injuries caused by abusive debt-collection practices must allege conduct which is sufficiently extreme and outrageous. See Townsend v. Rosenthal, Stein & Assocs., LLC, No. 1:13-cv-00045-WBH-GGB, 2014 WL 12859911, at *6 (N.D. Ga. July 14, 2014) (dismissing tort claim for abusive debt-collection practices because plaintiff's allegations "[did] not rise to the level of extreme, egregious, or outrageous conduct generally necessary to establish liability under traditional Georgia tort law"), *report and recommendation adopted by* No. 1:13-CV-0045-WBH, 2014 WL 12859912 (N.D. Ga. Nov. 6, 2014).

Here, Plaintiff alleges that she suffered "anxiety, unnecessary stress, frustration, loss of time, [and] embarrassment" due to Defendant's "improper, false, deceptive, and/or misleading representations and communications." (Doc. 6, p. 11.) However, the allegations in the Amended Complaint are nowhere near sufficient to state a claim for abusive debt-collection practices under Georgia law. As already stated, Plaintiff has failed to allege that Defendant made any false or misleading representations to her concerning the nature or character of the debt, much less that it did so willfully or in a threatening manner. See generally Discussion Sections I.B.2–3, supra.

Furthermore, Plaintiff has not alleged that Defendant intentionally or recklessly engaged in any other collection efforts which are sufficiently "extreme or outrageous."  (See generally doc. 6). Indeed, Defendant's alleged misconduct—making "false" or "deceptive" representations—pales in comparison to the conduct of debt-collectors who were found to have engaged in abusive debt collection practices.  See e.g., Blazer Fin. Servs., Inc. of Ga. v. Stewart, 233 S.E.2d 1, 2 (Ga Ct. App. 1977) ("[A]n employee of [defendant] told [plaintiff] that if she could not get her payment up and talk money to him that night that he would have a truck backed up in her yard and empty her house out.  There was also testimony of repeated harassing calls to her. . . .  Obviously, such threats exceed the bounds of the reasonable and necessary actions to collect a bill which a debtor is deemed to expect of his creditor."); Am. Fin. & Loan Corp. v. Coots, 125 S.E.2d 689, 690–91 (Ga Ct. App. 1962) (cause of action stated where debt-collector pointed and waved pistol in face of debtor and made threatening comments).  Therefore, Plaintiff has failed to sufficiently plead a cause of action under Georgia common law for negligence.

## CONCLUSION

For the above reasons, the court **GRANTS IN PART and DENIES IN PART** Defendant's Motion to Dismiss.  (Doc. 10.)   The Court **DISMISSES with prejudice** all claims within Plaintiff's Amended Complaint other than the claim that Defendant violated Section 1692c(a)(2) of the FDCPA and the claims that Defendant violated the GFBPA and UDPTEA which are premised on the violations of Section 1692c(a)(2).

The Court **LIFTS** the discovery stay, (see doc. 21), and **ORDERS** the parties to conduct a Rule 26(f) conference within **fourteen (14) days** from the filing of this Order and to file a Rule

26(f) Report within **seven (7) days** from the Rule 26(f) conference.[11]  Failure to comply with these directives may result in the dismissal of this action or striking of the answer.

**SO ORDERED** this 13th day of January, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[11]  The Rule 26(f) Report shall conform to the language and format of Judge Baker's Rule 26(f) Report Form located on the Court's website www.gasd.uscourts.gov under "Forms" and "Judge Baker-Instructions and Forms."